UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Daniel Dean Alley (1) and<br>Maksim Valentinovich Demikh (2),<br><br>        Defendants. | Case No. 15-cr-113 (MJD/HB)<br><br>**REPORT AND RECOMMENDATION** |

Katharine T. Buzicky, United States Attorney's Office, 300 South Fourth Street, Minneapolis, MN 55415, for United States of America

Richard J. Malacko, Malacko Law Office, 7449 80th Street South, P.O. Box 135, Cottage Grove, MN 55016, for Daniel Dean Alley

Daniel L. Gerdts, 247 Third Avenue South, Minneapolis, MN 55415, for Maksim Valentinovich Demikh

HILDY BOWBEER, United States Magistrate Judge

I. **Introduction**

    Defendants have been indicted for bank robbery (Count 1) and using, carrying, and brandishing a firearm during and in relation to a crime of violence (Count 2). (Indictment at 1-2 [Doc. No. 19].) Count 1 alleges that on or about November 14, 2014, Defendants "by force, violence, and intimidation," took

> from the person and presence of a victim teller money which belonged to
> and was in the care, custody, control, management and possession of

> Guaranty Bank, located in Coon Rapids, Minnesota . . . and in committing such offense, did assault and put in jeopardy the life of another person by use of a dangerous weapon . . .

(*Id.* at 1.)  Count 2 alleges that Defendants, during and in relation to their bank robbery, "did knowingly and unlawfully use, carry and brandish a firearm, namely, a .45 caliber 1911 type semi-automatic pistol." (*Id.* at 2.)

This matter is before the Court on Defendants' various dispositive motions: Alley's Motion to Suppress Evidence Obtained Unlawfully [Doc. No. 40]; Alley's Motion to Suppress Statements [Doc. No. 41]; Alley's Motion to Suppress Government Interception of Wire or Oral Communication [Doc. No. 42]; Alley's Motion for Severance of Defendant [Doc. No. 43]; Alley's Motion to Suppress Evidence Seized in Illegal Stop of Motor Vehicle [Doc. No. 44]; Demikh's Motion for an Order Suppressing All Electronic Surveillance Evidence [Doc. No. 49]; Demikh's Motion to Suppress All Identifications of Defendant Obtained Through Unlawful Identification Procedures [Doc. No. 50]; Demikh's Motion to Suppress All Evidence Obtained From Unlawful Searches and Seizures [Doc. No. 51]; Demikh's Motion to Suppress Statements Made by Defendant [Doc. No. 52].  The matter has been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a).  For the reasons set forth below, the Court recommends that all of the motions be denied.

## II. Discussion

### A. Alley's Motions

#### 1. Alley's Motion to Suppress Evidence Obtained Unlawfully

On November 16, 2015, before he could be apprehended in connection with the robbery alleged in the indictment, Defendant Alley was arrested by local police in Homewood, Alabama, for a separate offense: leaving the scene of a motor vehicle accident. (Tr. 77-86.) Alley moves to suppress evidence derived from that arrest, on the ground that the arrest was made without probable cause to believe a crime had been committed.[1] (Alley's Mot. Suppress Evidence Obtained Unlawfully at 1; Alley's Mem. Supp. Mot. Suppress at 5 [Doc. No. 64].) The Government responds that law enforcement had probable cause to arrest Alley. (Gov't's Resp. at 1-5 [Doc. No. 68].)

It is undisputed that Alley's arrest on November 16, 2015, was without a warrant. But a warrantless arrest that is supported by probable cause does not violate the Fourth Amendment. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* A probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, is sufficient. *United States v. Torres-*

---

[1] Alley's initial papers on this same motion also asserted that search warrants were issued without a sufficient showing of probable cause. (Mot. Suppress Evidence Obtained Unlawfully at 1.) Because Alley's initial motion did not set forth specific grounds for that challenge, and his post-hearing brief did not address this issue, the Court deems this challenge withdrawn. (*See* June 18, 2015, Court Mins. [Doc. No. 59] (cautioning that any issue not specifically identified and supported by post-hearing briefing would be deemed withdrawn).)

3

*Lona*, 491 F.3d 750, 756 (8th Cir. 2007). Courts examine the "events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted).

The facts surrounding Alley's Alabama arrest are as follows. Officer Frederick Blake testified that shortly after 11:00 p.m. on November 16, 2014, he received a call about a traffic accident on the interstate running parallel to Green Springs Highway, from which the occupants of one vehicle, a black Cadillac sedan, had left the scene.[2] (Tr. 79.) It was dark, chilly, and raining heavily that night. (Tr. 79.) Shortly after 11:10 p.m., his colleague, Officer Whisenhunt, gave Blake a description of the individuals who had fled

---

[2] Alabama Code § 32-10-1(a) requires:

> The driver of any motor vehicle involved in an accident resulting in injury to or the death of any person, or in damage to a motor vehicle or other vehicle which is driven or attended by any person, shall immediately stop such vehicle at the scene of such accident or as close thereto as possible and shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 32-10-3. Every such stop shall be made without obstructing traffic more than is necessary.

Section 32-10-6 goes on to provide:

> Every person convicted of violating Sections 32-10-1 through 32-10-5 or any of the provisions thereof, when such violation involved only damage to property, shall be punished the same as prescribed by law for a Class A misdemeanor; provided, however, that every person convicted of violating such sections, or any provisions thereof, when such violation involved death or personal injury, shall be punished the same as prescribed by law for a Class C felony.

Nothing in the record or in the arguments of the parties suggests that the accident involved death or personal injury.

4

the scene: a black male running across Green Springs Highway from the direction of the accident to a twenty-four hour restaurant; a black female wearing a black and white shirt; and a white male wearing a gray sweater. (Tr. 80-81.) Blake, who was driving through the parking lot of a strip mall when he received this description, saw a black female, wearing a black and white shirt, sitting with a white male wearing a gray sweater, in the lobby of a McDonald's. (Tr. 82-83.) From his vehicle, Blake observed that they were facing each other, eating, and were completely soaked with water. (Tr. 83.) After entering the McDonald's, Blake made eye contact with Alley and believed Alley was nervous, because he kept looking away, not wanting to make eye contact after the initial look. (Tr. 84.) Upon getting closer, Blake observed that the individuals were not only soaked, but also had mud and leaves on their clothing, which was consistent with what he believed their direction of travel would have been from the interstate—down a steep slope, over a chain-link fence that separated the interstate from a residential area, and then to the business area. (Tr. 85.) Blake then arrested Alley and his companion and placed them in handcuffs. (Tr. 86.)

Alley argues his arrest was unlawful under Rule 4.1 of the Alabama Rules of Criminal Procedure. Rule 4.1 provides that a law enforcement officer may arrest an individual without a warrant on a non-felony offense only if the offense was committed in the presence or view of the arresting officer.[3] (Alley's Mem. Supp. Mot. Suppress at

---

[3] Rule 4.1 states in pertinent part:

    (a) ARREST BY A LAW ENFORCEMENT OFFICER.
        (1) A law enforcement officer may arrest a person without a warrant if:

2-3.) Because leaving the scene of a property damage accident is not a felony, and Alley did not leave the scene in Officer Blake's presence or view, the arrest, Alley argues, was in contravention of Rule 4.1 and therefore not lawful. The Government responds that the "in the presence of" requirement is met here, and in any event, federal courts have disregarded this distinction when analyzing whether probable cause exists to make a warrantless arrest. (Gov't's Resp. at 3-5.)

Alabama courts have interpreted the "in the presence of" requirement to permit an arrest

> where the officer was apprised through the operation of any of his senses that a misdemeanor was being committed or attempted. Thus, for example, it would not be essential that an officer actually see the commission of an offense if another of his physical senses, perhaps that of smell or hearing, could afford him a fair inference that the offense was indeed being perpetrated at that point in time.

*Jakes v. State*, 398 So.2d 342, 345-46 (Ala. Crim. App. 1981). While it is true that Blake did not see Alley leave the scene of the accident, it can be argued that Blake saw Alley, matching Whisenhunt's description, at McDonald's, and his presence there rather than at the scene of the accident afforded him a fair inference that he was in violation of Alabama Code § 32-10-1(a) at that very moment.

---

(i) The law enforcement officer has probable cause to believe that a felony has been committed, or is being committed, and that the person to be arrested committed it, or
(ii) Any offense has been committed in the law enforcement officer's presence or view, or
(iii) The arrest is otherwise authorized by statute, such as Ala. Code 1975, §§ 32-5-171, 32-5A-191, 15-10-3.

6

The Court need not reach the question of whether the "in the presence of" requirement was met, however. The Eighth Circuit has observed that

> the prevailing view is that the Constitution does not require that a misdemeanor offense must have occurred in the officer's presence to justify a warrantless arrest . . . and neither the Supreme Court nor this court has decided the question, so any "in the presence" requirement is far from clearly established.

*Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1259 (8th Cir. 2010). Indeed, several circuits hold that "the common law 'in the presence' rule is not part of the Fourth Amendment." *Woods v. City of Chicago*, 234 F.3d 979, 995 (7th Cir. 2000); *see Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997) (stating that "[t]o date, neither the Supreme Court nor this circuit ever has held that the Fourth Amendment prohibits warrantless arrests for misdemeanors not committed in the presence of arresting officers"); *United States v. Laville*, 480 F.3d 187, 196 (3d Cir. 2007) (holding "the unlawfulness of an arrest under state and local law does not make the arrest unreasonable *per se* under the Fourth Amendment," and "at most, the unlawfulness is a factor federal courts to consider in evaluating the totality of the circumstances surrounding the arrest"); *Fields v. City of S. Houston, Texas*, 922 F.2d 1183, 1189 (5th Cir. 1991) (stating the "United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer"); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding the plaintiff's "right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, [is] not grounded in the federal Constitution and will not support a § 1983 claim"); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) (stating that the "requirement that a misdemeanor must

7

have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment").

Given such consensus across various circuits, the Court focuses on whether Blake violated the Fourth Amendment in arresting Alley without considering the "in the presence of" rule. The Court finds that under the circumstances here, Blake had probable cause to conclude Alley was one of the individuals reported to have left the scene of the accident at issue. Alley was in the vicinity of the accident scene shortly after the accident, matched the description of the individual reported to have run, was in the company of someone who matched the description of that person's companion, was in a location toward which the individual sought had been seen running, and had the appearance of someone who had just run from the scene in the rain. *See United States v. Oakley*, 153 F.3d 696, 697-98 (8th Cir. 1998) (affirming probable cause to arrest suspect for bank robbery when the defendant, who matched an updated description, was found less than an hour after the robbery and within twelve blocks of the bank). Alley's nervous behavior is also a relevant factor for the probable cause analysis. *See United States v. Jones*, 535 F.3d 886, 891 (8th Cir. 2008) ("Evasive behavior, while not alone dispositive, is another fact supporting probable cause."). Because there was probable cause for Alley's warrantless arrest, the Court recommends denying Alley's motion to suppress evidence derived from his arrest.

### 2. Alley's Motion to Suppress Statements

Alley argues that the following statement made to him by Agent David Walden at the Sherburne County Jail on March 19, 2015, was "clearly false and deceptive":

8

> And I want you to . . . I want you to talk to us. Because I think one, you'll get acceptance and responsibility; and two, you . . . you . . . you can or you can't, but by not talking to us, you're gonna get convicted and you're not gonna get the acceptance and responsibility. By talking to us you're gonna get convicted and you're gonna get the acceptance and responsibility, alright?

(Alley's Mem. Supp. Mot. Suppress at 4; Gov't Ex. 4 at 8.) Alley claims that any subsequent statements and waivers were tainted and involuntary. The Government responds that law enforcement may make a truthful statement about possible punishment without overbearing a defendant's will; that Walden's statement was not a promise; and even if it were a promise, the statement did not render Alley's confession involuntary. (Gov't's Resp. at 7-9.)

A statement is involuntary when it is extracted by threats, violence, or promises (express or implied) sufficient to overbear the defendant's will and critically impair his capacity for self-determination. *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004). Courts judge the voluntariness of a statement by the totality of the circumstances, *id.*, and they consider factors such as "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004). An interrogation will always involve some pressure "because its purpose is to elicit a confession." *United States v. Sanchez*, 614 F.3d 876, 883-84 (8th Cir. 2010).

The statement with which Alley takes issue is not the type of coercion that renders Alley's subsequent statements or any waivers involuntary. First, law enforcement "may make a truthful statement regarding a possible punishment without it overbearing a

defendant's will." *Dowell v. Lincoln Cnty., Mo.*, 762 F.3d 770, 776 (8th Cir. 2014). Defendant has not demonstrated that Walden's statement was an inaccurate description of acceptance of responsibility under the federal sentencing guidelines. Moreover, courts have found advising a defendant that the only way he could help himself was to accept responsibility and cooperate was not an "implied threat/promise" that rendered his subsequent statements involuntary. *United States v. Mashburn*, 406 F.3d 303, 309-310 (4th Cir. 2005). Even if Walden's description was inaccurate, courts have found misstatements of the law regarding a potential sentence reduction for acceptance of responsibility (*e.g.*, saying a defendant would only receive credit for acceptance of responsibility if he cooperated that day) insufficiently coercive to render the resulting confession involuntary under the totality of the circumstances. *See United States v. McKnight*, No. 99-4795, 2000 WL 380204, at *1 (4th Cir. Apr. 14, 2000).

Alley does not argue that his statements and any waivers were involuntary on other grounds, and the Court finds none. The question is whether under the totality of circumstances, Alley's will was overborne. Nothing in the record shows that Detective Mike Plankers or Agent Walden made any threats, verbal or physical, to Alley. Throughout the interrogation, Alley spoke articulately and rationally, and Alley does not claim any physical or mental impairment that would question the voluntariness of his statements. Finally, the one-and-a-half hour interview was not unduly burdensome. *See Simmons v. Bowersox*, 235 F. 3d 1124, 1133 (8th Cir. 2001) (finding an interrogation period of approximately two hours not particularly lengthy); *Williams v. Norris*, 576 F.3d 850, 868 (8th Cir. 2009) (upholding interrogation lasting as long as thirteen hours).

Under these circumstances, the Court concludes that Alley's will was not overborne, and his statements were voluntary. Accordingly, Alley's motion to suppress his statements should be denied.

### 3. Alley's Motion to Suppress Government Interception of Wire or Oral Communication

Alley moves to suppress all evidence obtained from him as a result of the Government's purported use of a pen register commencing December 3, 2014. (Alley's Mot. Suppress Gov't Interception at 1.) Neither party offers briefing on this issue.

As the Court cautioned that any issue not specifically identified and supported by their post-hearing briefing would be deemed withdrawn, this motion should be denied as moot.

### 4. Alley's Motion for Severance of Defendant

Alley moves to sever his trial from that of Demikh, arguing that joinder is not proper and failure to sever would prejudice his right to a fair trial. (Alley's Mot. Sever at 1.) The Government opposes the motion, arguing that joinder of defendants in a multiple-charge indictment is permissible where the offenses charged involve a common activity. (Gov't's Resp. at 5-6 [Doc. No. 57].)

The Court agrees with the Government. Two or more defendants may be charged in the same indictment if they allegedly "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). As the Eighth Circuit observed, "[i]n general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried

together." *United States v. Jones*, 880 F.2d 55, 61 (8th Cir. 1989). To warrant severance, a defendant must demonstrate that "real prejudice" will result from a joint trial. *United States v. Davis*, 534 F.3d 903, 916 (8th Cir. 2008). To show real prejudice, a defendant must establish that "(a) his defense is irreconcilable with that of his co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." *Id.* at 916-17. Courts have cured the risk of prejudice by administering careful and thorough jury instructions. *Id.* at 917.

Here, Alley and Demikh were charged with participating in the same act of bank robbery, and thus were properly joined under Rule 8(b). Alley merely states that joinder is improper and that failure to sever would prejudice his right to a fair trial. Without more, Alley has not established that his defense is irreconcilable with that of Demikh, or that the jury cannot compartmentalize the evidence as it relates to the two defendants. Any risk that a joint trial will prejudice Alley can be cured by careful and thorough jury instructions. Therefore, the Court recommends denying this motion.

### 5. Alley's Motion to Suppress Evidence Seized in Illegal Stop of Motor Vehicle

Alley moves to suppress "all evidence observed and/or seized as a result of traffic stops of motor vehicles that contained Defendant on December 5, 2014, and December 19, 2014," but does not offer briefing for this motion. (Alley's Mot. Suppress Evidence Seized Illegal Stop Motor Vehicle at 1.) As the Court cautioned that any issue not specifically identified and supported by their post-hearing briefing would be deemed withdrawn, the Court recommends denying this motion as moot.

### B. Demikh's Motions

#### 1. Demikh's Motion for an Order Suppressing All Electronic Surveillance Evidence

Demikh moves to suppress "all electronic surveillance evidence, together with any evidence derived therefrom," taking issue with "at least one telephone conversation in which Defendant was a participant." (Demikh's Mot. Order Suppressing All Electronic Surveillance Evidence at 1-2.) The Government responds that Demikh does not specify which conversation he challenges, and it is not aware of wiretapping or other telephone call interception used in the investigation of the bank robbery. (Gov't's Resp. at 2 [Doc. No. 67].) The Government also argues that to the extent Demikh is challenging monitored telephone calls placed from a jail, police station, or other police holding facility, Demikh has no reasonable expectation of privacy if he knows his calls are recorded. (*Id.*)

A motion under Federal Rule Criminal Procedure 12(b) to suppress evidence "must identify that evidence and the nature of the challenge." D.Minn. L.R. 12.1(c)(1)(B). Demikh has not identified the specific telephone conversation with which he takes issue. Accordingly, the Court recommends denying Demikh's motion.

#### 2. Demikh's Motion to Suppress All Identifications of Defendant Obtained Through Unlawful Identification Procedures

Demikh concedes that based on the evidence entered at the hearing, the question of whether the out-of-court identification procedures used by police with two potential witnesses may have rendered identification testimony unreliable, may be moot. (Demikh's Mem. Supp. Mot. Suppress Evidence at 2 [Doc. No. 66].) Demikh also

13

concedes there is "no substantial likelihood of irreparable misidentification that affects Defendant's Due Process rights because the identifications made by the witnesses identified at the motions hearing have nothing to do with the charges made in the Indictment." (*Id.* at 3.) As it appears Demikh is no longer pursuing this motion, the Court recommends denying it as moot.

### 3. Demikh's Motion to Suppress All Evidence Obtained From Unlawful Searches and Seizures

Demikh withdraws his motion to suppress the search and seizure evidence for which the Government secured warrants, *i.e.*, the search of his residence and his person for DNA, both on March 18, 2015. (Demikh's Mem. Supp. Mot. Suppress Evidence at 6.) While Demikh persists with this motion "as to any other search and seizure evidence," he does not identify specifics and assumes that any discovery of motor-vehicle stops will not be offered at trial because the Government did not introduce such evidence at the hearing. (*Id.*) The Government's response makes no mention of any searches and seizures in connection with motor-vehicle stops.

Under these circumstances, the Court understands that the Government will not introduce any search and seizure evidence in connection with motor-vehicle stops for Demikh. Accordingly, this motion should be denied as moot.

### 4. Demikh's Motion to Suppress Statements Made by Defendant

Demikh argues that he invoked his right to remain silent through two statements he made while in custody: "I mean I'm done talking unless you really got evidence that I did it," and "Shit, I don't have nothing to say I guess." (Demikh's Mem. Supp. Mot.

Suppress Evidence at 4-6.) He moves, therefore, to suppress any statements he made thereafter when agents continued to interrogate him. The Court disagrees.

Government agents conducting interrogations must "scrupulously honor[ ]" a defendant's decision to invoke his right to remain silent and cut off questioning. *Michigan v. Mosely*, 423 U.S. 96, 104 (1975). But a suspect must unequivocally invoke his right to remain silent in order to trigger the protections of *Mosely*. *Simmons*, 235 F.3d at 1131. The invocation must be a "clear, consistent expression of a desire to remain silent." *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995). "Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*. *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007).

The Court finds that Demikh's statement, "I mean I'm done talking unless you really got evidence that I did it," did not unequivocally invoke his right to remain silent. With the qualifier of "unless you really got evidence that I did it," the statement suggests that Demikh was willing to talk if the officers had evidence of the alleged crime. *See Avila v. Biter*, No. 2:10-cv-2857, 2014 WL 584548, at *25 (E.D. Cal. Feb. 12, 2014) (finding the statement "No, I'm done talking here" to suggest the defendant was willing to talk somewhere else, and the statement "I'm done talking to you" to suggest the defendant was, among other things, willing to talk to someone else, and therefore concluding that neither statement unequivocally invoked the right to remain silent).

Likewise, Demikh's statement, "Shit, I don't have nothing to say I guess," is insufficient to constitute an unequivocal invocation of his right to remain silent. First, the

15

phrase "I guess" has been viewed as equivocal in other contexts. *E.g.*, *Culkin v. Purkett*, 45 F.3d 1229, 1233 (8th Cir. 1995) (describing a witness's "I guess" response to a court's question as "equivocal"); *United States v. Nelson*, 450 F.3d 1201, 1212 (10th Cir. 2006) (describing the phrase "I guess I'm ready to go to jail then" as "at best an ambiguous or equivocal statement" in considering an alleged invocation of the right to remain silent); *United States v. Wiggins*, 131 F.3d 1440, 1442 (11th Cir. 1997) (describing the phrase "I plead guilty I guess" as "equivocal"). Second, courts have found a defendant's statement, "I have nothing to say to him," followed even by his departure from the interview room, insufficient to invoke the right to remain silent. *See United States v. Demarce*, No. 2:07-cr-64, 2007 WL 4276561, at *3 (D.N.D. Nov. 26, 2007). Here, Demikh did not leave the room after his statement, rendering his assertion even more equivocal than the defendant in *Demarce*. Third, the context of Demikh's statement shows that he was responding to the officer's question about his motivation to commit the bank robbery:

> Q: . . . But the important thing is that based on the time, the amount of time, whether it's short or long, you're gonna come out a younger man if you have acceptance and responsibility . . . and can explain the motivation. If the motivation is you needed to send money to your kid, fuckin' tell me. I wish you'd tell me.
>
> A: (inaudible) I don't really care about that stuff. I don't, I don't, I don't know. Shit, I don't have nothing to say I guess.
>
> Q: Well what's the motivation man?
>
> A: There is no motivation.

16

(Gov't's Ex. 3 at 31.) Taken as a whole, the exchange shows Demikh was indicating he had no answer to the officer's question about his motivation for committing the alleged crime, not that he was invoking his right to silence.

In short, Demikh's two statements did not unequivocally invoke his right to remain silent. The Court therefore recommends denying this motion.

## III. Recommendation

Based on the foregoing and all of the files, records, and proceedings herein, it is recommended that all of Defendants' motions be **DENIED**.

Dated: August 12, 2015        s/ *Hildy Bowbeer*
    HILDY BOWBEER
    United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.